IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No.: 2:06cr62-WHA |
| ) | |
| MICHAEL ANTHONY SHEFFIELD ) | |

**MOTION TO SUPPRESS**

**COMES NOW** the Defendant, Michael Anthony Sheffield, by and through his undersigned counsel, Jennifer A. Hart, and pursuant to Rules 12 and 41 of the Federal Rules of Criminal Procedure, as well as the Fourth Amendment to the United States Constitution, moves this Court for an Order suppressing any items seized during the search of Mr. Sheffield's car and any statements made by Mr. Sheffield during or subsequent to the search, and to prohibit the Government from introducing into evidence any reference to any statement made by Mr. Sheffield or any items seized as a result of the search.[1]

**Issues Presented**

Whether the police had reasonable suspicion to conduct a traffic stop of Michael Sheffield on November 2, 2004?

Whether the warrantless search of the trunk of Mr. Sheffield's car was supported by any exception to the warrant requirement?

**Facts**

On November 2, 2004, at some point during the daytime, Montgomery Police Officer Kevin

---

[1] This motion is filed out of time. Contemporaneously with this motion, the Defendant is filing a Motion seeking leave of the Court to file the motion out of time as well as a Motion to Continue the Trial from the August 7, 2006 trial term.

Palmer performed a traffic stop on a vehicle driven by Michael Sheffield near Pauline Street in Montgomery[2]. Mr. Sheffield had not committed any traffic violation[3] but, according to Palmer, was pulled over because: (1) he was seen leaving a residence where drug distribution is known to occur; (2) had a Mobile County license plate; and (3) because the car he was driving was registered to an unknown female. Palmer stated, "I decided to make a traffic stop on the vehicle due to his location at the known drug house." (*See* Attachment A)

Following the stop, Officer Palmer conducted a warrantless search of the car. Mr. Sheffield denied the officer consent to search the vehicle because it was not his. Palmer told Mr. Sheffield he had the authority to consent to a search because he was driving the car. It is unclear whether Mr. Sheffield then voluntarily consented to the search of his vehicle (there is no signed consent form), but at the direction of the officer, Mr. Sheffield opened the trunk of the car. The officer located approximately 16 firearms in the trunk of the car. Mr. Sheffield was then taken into custody and the case was taken over by Detective Leonard Pelham.

Detective Pelham charged Michael Sheffield with receiving stolen property. Mr. Sheffield was advised of his *Miranda* rights and gave a taped statement to Detective Pelham. This tape no longer exists. However, in a transcript provided by the Government in discovery, Mr. Sheffield stated that he had stolen the firearms from his father's home in Winston, Georgia so that he could

---

[2] On the Alabama Uniform Incident/Offense Report, the time of the offense is noted as 1300 hours. However, on the Montgomery Police Department Supplementary Offense report, the time of the offense is listed as approximately 1600 hours. Additionally, in a Memorandum prepared by Officer Palmer, the time of the offense is listed as approximately 1100 hours.

[3] After the stop, it was discovered that Mr. Sheffield did not have a driver's license or proof of insurance. The officer allegedly issued citations for these two traffic offenses. These citations were not included in the discovery provided by the Government.

sell them for money to support his crack addiction.

Eventually, this case was turned over to federal law enforcement officers for federal prosecution. In January of 2006, well over a year after the initial stop, ATF Special Agent Sybil Hall-McNeil contacted Detective Pelham and Officer Palmer to inquire about the circumstances of the traffic stop. By that time, neither Pelham nor Palmer was still employed with the Montgomery Police Department. Pelham, the officer who interviewed Michael Sheffield remembered questioning Mr. Sheffield regarding possession of stolen firearms after viewing them in the car driven by Mr. Sheffield. According to Pelham, during a conversation with Mr. Sheffield he advised him that he would "drop" marijuana charges against Mr. Sheffield if Mr. Sheffield told Pelham where he had gotten the guns. Mr. Sheffield told Detective Pelham that he had stolen the firearms from his father's home in Georgia and that he was on his way to Mobile when he was arrested.

When asked by Agent Hall-McNeil whether he made Mr. Sheffield any promises in exchange for his confession, Pelham stated, "No, I just told him that I would not charge him with the marijuana that I found on him, and I didn't." Pelham also advised that the marijuana would have been logged in as "found" at the Police Department. In spite of this new reference to drugs there is absolutely no evidence regarding, or reference to, marijuana being seized from Michael Sheffield during the traffic stop in November, 2004.

Undersigned counsel spoke with Mr. Pelham on July 19, 2006 regarding the stop of Michael Sheffield. Pelham indicated that he did not recall that there had been any drug transaction witnessed by Palmer but that he believed Palmer had "seen money exchanging hands." He also advised that any drug seized would have been impounded and that there would be an impound log of the seizure which could be discovered by searching for cases under his name. According to information

received by the Government, the officer who would have access to this information is currently in Iraq.

Agent Hall Mc-Neil also interviewed former Officer Kevin Palmer in January of 2006. Mr. Palmer advised the Agent that he had received complaints of drug activity occurring at a particular house on Pauline Street. On the day of Michael Sheffield's arrest, Palmer claimed that he was conducting surveillance on this house when he observed Michael Sheffield in an apparent drug transaction with a black male. Palmer claims he waited for Sheffield to leave the residence and then conducted a traffic stop of Mr. Sheffield. According to Palmer, Mr. Sheffield consented to the search of his car. After finding nothing inside the car, Palmer claims he requested and received consent to search the trunk. Palmer instructed Mr. Sheffield to open the trunk, and the firearms were discovered. Mr. Palmer told the Agent that he did not recall that Mr. Sheffield was in possession of any drugs. Palmer also noted that he was the officer with the discretion to dismiss drug charges should they have been warranted in this case.

During a telephone conversation with Mr. Palmer on July 19, 2006, Palmer advised the undersigned counsel that he could not specifically remember the case. When informed that the case involved the seizure of numerous stolen firearms during a traffic stop, Mr. Palmer stated that he recalled that Michael Sheffield was a white male in an all black neighborhood, that he did not remember that the stop involved any drugs at all, but that there was a known crack house on Pauline Street and that it was possible that Mr. Sheffield might have been trying to trade guns for drugs. This "new" statement is totally inconsistent with the written report prepared by Mr. Palmer which makes no reference to a drug transaction at all.

Mr. Sheffield is now charged in this Court with being a felon in possession of a firearm, in

violation of 18 U.S.C. § 922(g)(1), transportation of stolen forearms, in violation of 18 U.S.C. §§ 922(I) and 924(a)(2), and receiving stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).

**Discussion**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Const. amend IV. While not all police-citizen encounters trigger Fourth Amendment scrutiny, this Court has held that, a traffic stop is a limited seizure within the meaning of the Fourth Amendment, and that it is analogous to an investigative detention. Therefore, the legality of such stops is analyzed under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Purcell*, 236 F.3d 1274, 1277(11th Cir. 2001).

Whether an officer has a "reasonable suspicion" of criminal activity sufficient to justify such an investigatory stop is determined based on the totality of the circumstances, and from the collective knowledge of the officer involved in the stop. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). However, "reasonable suspicion" may not be based on the officer's hunch, but requires that the police officer be able to point to specific and articulable facts which reasonably warrant the intrusion. *Id*. (citing, *Terry v. Ohio* at 1879); See also, *United States v. Mikell*, 102 F.3d 470, 475 (11th Cir. 1996) (police are required to articulate some minimal, objective justification for the stop)

In this case, there was absolutely no reason for the officer to conduct a traffic stop of Michael Sheffield or to conduct a warrantless search of his car. Despite the later inconsistent stories of the officers that the stop was predicated by a witnessed drug transaction, there is absolutely no evidence

to support this assertion: no report, no drugs, no impound log. The only reason given by the officer for the stop was that Michael Sheffield was in a high crime area, had a Mobile tag on his car, and that the car was registered to a female. These facts do not justify the seizure of Michael Sheffield. Therefore, the subsequent search of his car was invalid and any items seized or statements made as a result of the search are due to be suppressed.

Additionally, even if the initial stop of Mr. Sheffield was supported by reasonable suspicion. Absent valid consent to search, the officer could not legally search the trunk of the car without a search warrant. In *Michigan v. Long*, 463 U.S. 1032, 1047(1983), the Supreme Court held that a protective search of the passenger compartment of a suspect's vehicle was permissible pursuant to *Terry*. 463 U.S. at 1035. In upholding the search of the passenger compartment of the car, the Court held that *"Terry* need not be read as restricting the preventative search [for weapons] to the person of the detained suspect." *Long*, 436 U.S. at 1047. The search of the passenger compartment of a vehicle was justified, the Court reasoned, due to the danger to police officers inherent in detentions involving suspects in vehicles. *Id*. The Court held:

> <u>the search of a passenger compartment of an automobile</u>, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rationale inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous <u>and</u> may gain immediate control of weapons.

*Long*, 436 U.S. at 1049 (emphasis added). The weapons in this case were found in the trunk of the car, not the passenger compartment, Obviously, Michael Sheffield did not have access to the trunk of his car because he was placed in Palmer's patrol car. Accordingly, the search of the trunk was impermissible, violated the Fourth Amendments and the firearms are due to be suppressed.

Additionally, any and all statements obtained as a result of the unlawful seizure of Mr. Sheffield and the firearms are "fruit of the poisonous tree" and are due to be suppressed as well. *See Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

Dated this 20th day of July 2006.

                                         Respectfully submitted,

                                         s/Jennifer A. Hart
                                         **JENNIFER A. HART**
                                         FEDERAL DEFENDERS
                                         MIDDLE DISTRICT OF ALABAMA
                                         201 Monroe Street, Suite 407
                                         Montgomery, AL 36104
                                         Phone: (334) 834-2099
                                         Fax: (334) 834-0353
                                         jennifer_hart@fd.org
                                         AL Bar Code: HAR189

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Tommie Hardwick.

Respectfully submitted,

s/Jennifer A. Hart
**JENNIFER A. HART**
FEDERAL DEFENDERS
MIDDLE DISTRICT OF ALABAMA
201 Monroe Street, Suite 407
Montgomery, AL 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
jennifer_hart@fd.org
AL Bar Code: HAR189